UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DXC TECHNOLOGY COMPANY,<br><br>      Petitioner,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>      Respondent. | 19-cv-7954 (VEC)<br><br>**PETITION TO CONFIRM ARBITRATION AWARD** |

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.* (the "FAA"), Petitioner DXC Technology Company ("DXC"), by and through its attorneys Latham & Watkins LLP, petitions this Court to confirm a final arbitration award against Respondent Hewlett Packard Enterprise Company ("HPE," and collectively with DXC, the "Parties") rendered pursuant an arbitration agreement between the Parties and the Administered Arbitration Rules of the International Institute for Conflict Prevention & Resolution ("CPR").

**OVERVIEW**

1. This action seeks to confirm a final arbitration award (the "Award") issued by a panel of three distinguished arbitrators (the "Panel") following more than a year of proceedings and an 11-day evidentiary hearing in the arbitration captioned *DXC Technology Company v. Hewlett Packard Enterprise Company*, CPR File No. G-18-28-G-AA (the "Arbitration"). In the Award, the Panel found that HPE breached the Separation and Distribution Agreement between DXC and HPE dated May 24, 2016, as amended (the "SDA"), by refusing to indemnify DXC for hundreds of millions of dollars in capital lease liabilities that HPE transferred to DXC in connection with HPE's 2017 spinoff of its enterprise services business. The Award directs HPE to pay DXC $631,810,651 for those excess capital lease liabilities, plus pre-award interest of

$34,266,584 and post-award interest at 3% per annum compounding quarterly from the day of the Award until the date the indemnification payment and pre-award interest are paid.[1]

## THE PARTIES

2.  Petitioner DXC is a Nevada corporation with its principal place of business at 1775 Tysons Boulevard, Tysons, VA 22102. DXC was the claimant in the Arbitration.

3.  Respondent HPE is a Delaware corporation with its principal place of business at 6280 America Center Drive, San Jose, CA 95002. HPE was the respondent in the Arbitration.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.  This Court has personal jurisdiction over HPE because HPE consented to personal jurisdiction in New York for actions relating to the Arbitration by agreeing in the Dispute Resolution Agreement (defined below) to arbitrate the dispute in New York and participating in the Arbitration in New York, and by agreeing in Section 8.4(a)(v) of the SDA that "[j]udgment upon [the Award] may be entered in any court having jurisdiction thereof." The Court also has personal jurisdiction over HPE because HPE regularly transacts business in New York, by, among other things, participating in the Arbitration, maintaining a place of business at 556 West 22nd Street, New York, NY 10011, and regularly shipping products into New York.

---

[1] A true and correct copy of the Award is attached as Exhibit 1 to the Declaration of Adam B. Shamah and served and filed with this Petition (the "Shamah Declaration").

2

6. Venue is proper in the Southern District of New York pursuant to 9 U.S.C. § 9 and 28 U.S.C. § 1391 because the Dispute Resolution Agreement designates New York, New York as the place of arbitration and the Award was made in New York, New York.

## FACTUAL BACKGROUND

7. DXC emerged from the spinoff of HPE's enterprise services business ("ES"). In 2017, ES was spunoff and merged with Computer Sciences Corporation ("CSC"). This spinoff/merger transaction resulted in the creation of a new corporate entity, DXC.

8. The SDA governs the spinoff transaction and allocates liabilities between HPE and DXC. Under the SDA, liabilities to be allocated to and spunoff with ES to DXC are "Everett Liabilities," while liabilities to remain with HPE are "Excluded Liabilities." The SDA requires HPE to indemnify DXC for all Excluded Liabilities.

9. Under the express terms of the SDA, the Excluded Liabilities for which HPE agreed to remain responsible include all long-term capital lease obligations above $250 million.[2]

10. HPE agreed that these capital lease liabilities would be Excluded Liabilities because in May 2016—just days before HPE and CSC announced the transaction—CSC discovered that ES had over a billion dollars of capital lease liabilities that HPE had failed to disclose. These undisclosed liabilities put the transaction in jeopardy. The negotiated economic terms of the deal—including the debt that would transfer from HPE to DXC—did not include the assumption by DXC of HPE debt in the form of capital lease liabilities.

11. HPE proposed a solution: HPE agreed to modify ES's capital leases so that they would qualify as operating leases under U.S. generally accepted accounting principles ("GAAP"). HPE agreed to cap the amount of capital lease liabilities that would transfer to DXC

---

[2] Under the SDA, long-term capital lease obligations are those expiring after March 31, 2019.

at $250 million and that capital lease liabilities above the $250 million cap would be Excluded Liabilities for which HPE agreed to indemnify DXC.

12. After signing the SDA in May 2016, HPE amended the terms of thousands of ES's capital leases in an attempt to convert them into operating leases. CSC repeatedly sought information from HPE about its lease conversion methodology. But HPE shared very little information with CSC—and most of what it did share turned out to be false. After the transaction closed in March 2017, as part of its purchase price accounting, DXC evaluated the modified leases and discovered that they failed to qualify as operating leases under GAAP. DXC again sought information from HPE about its methodology, but HPE rebuffed DXC's requests.

13. In October 2017, after extensive consultations with its accounting advisors, DXC determined that HPE failed successfully to convert the leases to operating leases under GAAP. In quarterly financial statements filed on November 8, 2017, DXC presented the leases as capital leases. As a result of the failed conversions, DXC determined that it inherited from HPE roughly $1 billion in long-term capital lease liabilities in excess of the SDA's cap.

## THE ARBITRATION

14. The SDA contains mandatory and "exclusive" dispute resolution procedures for "any dispute, controversy or claim, whether sounding in contract, tort or otherwise, arising out of or relating to" the SDA. (SDA § 8.1.) These procedures consist of executive negotiation (*see id.* § 8.2) followed by mediation (*see id.* § 8.3) and then binding arbitration (*see id.* § 8.4).[3]

15. On November 8, 2017, DXC delivered to HPE a notice demanding indemnification for the roughly $1 billion in long-term capitalized lease obligations above the SDA's $250 million cap, pursuant to the SDA. On November 10, 2017, after HPE denied its

---

[3] A true and correct copy of the SDA is attached as Exhibit 2 to the Shamah Declaration.

4

indemnification obligation, DXC sent HPE a dispute notice, triggering the period of executive negotiation under the SDA. For more than 45 days following the dispute notice, the Parties exchanged information and held meetings of executives and counsel. On January 6, 2018, with HPE continuing to deny its indemnification obligation, DXC sent HPE a notice initiating mediation under the SDA. The parties appointed Hon. Layn R. Phillips as mediator on January 16, 2018, and met for mediation on February 12, 2018. Mediation did not resolve the dispute.

16. Section 8.4(a) of the SDA provides that any dispute not resolved in mediation "shall, at the written request of any Party . . . be submitted to binding arbitration." (*Id.* § 8.4(a).)

17. On March 23, 2018, DXC and HPE entered a Dispute Resolution Agreement modifying certain parts of the SDA for purposes of the Arbitration.[4] Specifically, the Parties agreed the Arbitration would take place in New York City before a panel of three arbitrators.

18. On March 27, 2018, DXC filed and served a Notice and Demand for Arbitration.

19. On April 17, 2018, HPE filed and served a Notice of Defense.

20. Pursuant to the arbitrator-selection process agreed to by the Parties in the Dispute Resolution Agreement, between April 9, 2018 and June 11, 2019, DXC and HPE nominated and ranked arbitrator candidates. Based on the Parties' rankings of the candidates, on June 11, 2018, CPR confirmed the selection and appointment of the following three arbitrators to the Panel:

    a. <u>Hon. Faith S. Hochberg</u>: Judge Hochberg served as a federal judge on the U.S. District for the District of New Jersey for 16 years, from 1999 until her retirement from the bench in 2015. Judge Hochberg previously served as the U.S. Attorney

---

[4] A true and correct copy of the Dispute Resolution Agreement is attached as Exhibit 3 to the Shamah Declaration.

for the District of New Jersey. Judge Hochberg is now a nationally recognized arbitrator, and, based on the Parties' rankings, was appointed Chair of the Panel.

b. <u>Hon. Barbara S. Jones</u>: Judge Jones served as a federal judge on the U.S. District Court for the Southern District of New York from 1995 until her retirement from the bench in 2013. Judge Jones currently is a partner at Bracewell LLP and frequently serves as an arbitrator and court-appointed special master or monitor.

c. <u>Edna Sussman</u>: Ms. Sussman is a leading full-time neutral who has presided as an arbitrator in more than 200 arbitrations during the last 15 years. Ms. Sussman previously served as a commercial litigation partner at White & Case LLP.

21. On July 2, 2018, the Parties and Panel met for an initial conference, where the Parties confirmed their agreement to arbitrate the dispute before the Panel.

22. On July 26, 2018, the Panel entered a Scheduling and Discovery Order. By agreement of the Parties, the Scheduling and Discovery Order provided (among other things) that (i) the Federal Rules of Civil Procedure and Federal Rules of Evidence would apply in the Arbitration; (ii) each party would be entitled to written discovery of up to 25 requests for production and five interrogatories; (iii) each party would be entitled to take up to seven fact witness depositions of current and former employees of the parties; (iv) each party would be entitled to seek documents from and depose one current or former employee of six third-party accounting and valuation firms; (v) the Parties would be entitled to simultaneously submit opening expert reports and rebuttal expert reports on dates set forth in the Scheduling and Discovery Order and to depose each expert who submitted a report; (vi) additional discovery other than that authorized in the Scheduling and Discovery Order "must be ordered by the Panel,

and will be permitted upon a showing of good cause"; and (vii) deadlines "will be strictly enforced, except that for good cause shown, the Panel may adjust any applicable deadlines."

23. Thereafter, the Parties engaged in extensive fact and expert discovery. DXC produced approximately 15,000 documents and deposed seven current and former employees of HPE, as well as employees of HPE's auditor, Ernst & Young LLP ("EY"), and valuation consultant, Duff & Phelps LLP ("Duff"). DXC also produced six reports from four experts and deposed HPE's experts. HPE produced over 20,000 documents and deposed seven employees of DXC, as well as employees of DXC's auditor, Deloitte & Touche LLP ("Deloitte") and accounting advisor, PricewaterhouseCoopers ("PwC"). HPE produced eight reports from three experts (including two supplemental reports from an expert after the deadlines for opening and rebuttal reports in the Scheduling and Discovery Order passed) and deposed DXC's experts. In response to requests from the Parties, EY, Deloitte, PwC, and Duff produced documents as well.

24. Pursuant to the Scheduling and Discovery Order, on December 21, 2018, DXC filed a motion for partial summary judgment. HPE filed a brief, declaration, and exhibits in opposition to DXC's motion, and the Panel held oral argument. On January 16, 2019, the Panel granted partial summary judgment to DXC, holding that the "plain language of the indemnification provisions of the SDA requires HPE to indemnify DXC for Long Term Capitalized Lease Obligations exceeding the $250 million threshold," but reserved judgment on whether the SDA required dollar-for-dollar indemnification for all Long Term Capitalized Lease Obligations and on the timing of indemnification payments, inviting the Parties to present evidence on those issues at the hearing. The Panel struck three of nine affirmative defenses, finding them precluded by the text of the SDA and other undisputed evidence as a matter of law.

25. On January 22, 2019, the Parties submitted extensive pre-hearing briefing.

26.     The hearing was held in New York, New York on February 4-16, 2019. At the hearing, the Panel heard opening statements and testimony from 17 fact witnesses and five experts, and admitted hundreds of exhibits to evidence. After considering the evidence, post-hearing briefs, and other submissions, the Panel heard closing arguments on May 10, 2019.

27.     On August 15, 2019, the Panel issued a unanimous 86-page Award. After analyzing relevant GAAP and extensive testimony from accounting and valuation experts for both Parties (among other evidence), the Panel found that the key components of HPE's lease conversion methodology violated GAAP and that nearly all of the disputed leases were capital leases. As a result, the Panel found that HPE transferred $881,810,651 in long-term capital lease obligations to DXC as of the relevant measurement date pressed by HPE. After subtracting the SDA's $250 million cap, the Panel found that those long-term capital lease obligations represent $631,810,651 in Excluded Liabilities. Based on the documents and testimony presented at the hearing, the Panel found that the SDA required HPE to indemnify DXC dollar-for-dollar for those Excluded Liabilities in one lump-sum payment on the date of DXC's indemnification demand, November 8, 2017. By refusing to do so, the Panel found, HPE breached the SDA. The Panel rejected HPE's affirmative defenses and awarded DXC $631,810,651, plus pre-award interest of $34,266,584 and post-award interest at 3% per annum compounding quarterly pursuant to Section 7.6 of the SDA, which makes this pre- and post-award interest mandatory.

28.     The Award provides in relevant part:

> It is hereby ORDERED:
>
> (1)     That Respondent Hewlett Packard Enterprise Company has breached the Separation and Distribution Agreement (SDA) between HPE

> and Claimant DXC Technology Company (DXC) and shall indemnify DXC thereunder.
>
> (2)   That Claimant DXC is awarded $631,810,651, plus interest, as recovery on all of its claims as stated against HPE in the above-referenced matter, and that HPE shall pay this amount to DXC within 30 days of this award.
>
> (3)   That DXC shall receive pre-award interest from HPE at a rate of 3% per annum, compounded quarterly, calculated from November 8, 2017 until the date of this award, which amount is $34,266,584.
>
> (4)   That DXC shall receive post-award interest on this award from HPE, also at a rate of 3% per annum, compounded quarterly, calculated from the date of this award until such time as the recovery and pre-award interest is paid in full.
>
> (5)   This FINAL AWARD is in full settlement of all claims submitted to this arbitration. All claims not expressly granted are hereby denied. . . .

(Ex. 1 at 86.)

29.   Section 8.4(a)(v) of the SDA provides that "[j]udgment upon [the Award] may be entered in any court having jurisdiction thereof."

30.   DXC brings this action to confirm the Award.

### CLAIM FOR RELIEF

31.   The Award is final and binding on the Parties pursuant to Sections 8.1 and 8.4 of the SDA and CPR Rule 15.7.

32.   Pursuant to the FAA, 9 U.S.C. § 9, DXC is entitled to a judgment entered by this Court to confirm the award.

### PRAYER FOR RELIEF

WHEREFORE, pursuant to 9 U.S.C. § 9, DXC respectfully requests that this Court issue a judgment in its favor:

1. Confirming and entering judgment on the Award; and

2. Providing any and all other further relief that the Court deems just and proper.

Dated: August 26, 2019
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Jamie Wine*

Jamie L. Wine
Douglas K. Yatter
Kuan Huang
Adam B. Shamah
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
jamie.wine@lw.com
douglas.yatter@lw.com
kuan.huang@lw.com
adam.shamah@lw.com

Abid R. Qureshi (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
abid.qureshi@lw.com

Hilary H. Mattis (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
hilary.mattis@lw.com

*Attorneys for Petitioner
DXC Technology Company*